# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———— • ————

AMOS J. WELLS III,

*Petitioner-Appellant,*

v.

BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, No. 4:21-cv-01384-O

## PETITION FOR REHEARING EN BANC

Matthew L. Kutcher
COOLEY LLP
110 N. Wacker Dr.
Chicago, IL 60606
(312) 881-6500
MKutcher@cooley.com

Elizabeth M. Wright
COOLEY LLP
500 Boylston St.
Boston, MA 02116
(617) 937-2300

William S. Harris
The Law Office of William S. Harris
604 E. 4th St., Suite 101
Fort Worth, TX 76102
(817) 718-7060

Ginger D. Anders
Xiaonan April Hu
Andra Lim
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
    Suite 500E
Washington, DC 20001
(202) 220-1100
Ginger.Anders@mto.com

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal:

**Petitioner-Appellant:** Amos J. Wells III.

**Counsel for Petitioner-Appellant:** Ginger D. Anders, Xiaonan April Hu, Andra Lim, and Kyle Schneider of Munger, Tolles & Olson LLP; Matthew L. Kutcher, Shamis Beckley, Elizabeth M. Wright, Robert Jacques, Alessandra Rafalson, Hanna Evensen, Allison O'Neill, Mariah Young, Alexandra Cubaleski, and Ann Jacob of Cooley LLP; William S. Harris of The Law Office of William S. Harris; and Drew Wegner of Cohen Dowd Quigley P.C.

**Respondent-Appellee:** Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division.

**Counsel for Respondent-Appellee:** Jefferson David Clendenin, Office of the Attorney General.

Date: August 5, 2025

s/ Matthew L. Kutcher

Matthew L. Kutcher
COOLEY LLP
110 N. Wacker Dr.
Chicago, IL 60606
(312) 881-6500
mkutcher@cooley.com
*Attorney for Petitioner-Appellant*

i

## FEDERAL RULE 40(B)(2) STATEMENT

The undersigned counsel believes that this proceeding involves two questions of exceptional importance:

Did the panel contravene Supreme Court precedent by denying a Certificate of Appealability on a defendant's claim that trial counsel rendered ineffective assistance by presenting expert testimony that he is genetically prone to violence?

Did the panel contravene Supreme Court precedent by denying a Certificate of Appealability on a defendant's claim that the trial court's exclusion of mitigating video evidence violated his Eighth Amendment right?

The panel's decision also conflicts with the following Supreme Court decisions:

*Buck v. Davis*, 580 U.S. 100 (2017)
*Florida v. Nixon*, 543 U.S. 175 (2004)
*Zant v. Stephens*, 462 U.S. 862 (1983)
*Strickland v. Washington*, 466 U.S. 668 (1984)
*Green v. Georgia*, 442 U.S. 95 (1979)
*Lockett v. Ohio*, 438 U.S. 586 (1978) (plurality opinion)

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ I

FEDERAL RULE 40(B)(2) STATEMENT ........................................................... II

STATEMENT OF ISSUES MERITING EN BANC CONSIDERATION.............. 1

INTRODUCTION .................................................................................................. 1

FACTS AND PROCEDURAL HISTORY ............................................................. 2

ARGUMENT .......................................................................................................... 6

I.  THE PANEL ERRONEOUSLY REJECTED WELLS' COA CLAIM
    BASED ON COUNSEL'S DECISION TO RAISE A VIOLENCE-
    GENETICS THEORY ...................................................................................... 6

    A.  The Supreme Court's Decision in Buck Confirms Wells'
        Ineffective-Assistance Claim Is At Least Debatable .......................... 7

    B.  The Panel Decision Warrants Review Because It Conflicts With
        Buck and Other Supreme Court Precedent ......................................... 9

II. THE PANEL ERRONEOUSLY REJECTED WELLS' COA CLAIM
    BASED ON HIS RIGHT TO PRESENT MITIGATING EVIDENCE....... 12

    A.  The Panel Decision Conflicts with Lockett and Other Supreme
        Court and Circuit Precedent ............................................................ 13

    B.  The Panel Decision Warrants Review Because Both the District
        Court's Constitutional and Procedural Rulings Are At Least
        Debatable .......................................................................................... 15

CONCLUSION ..................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................. 19

CERTIFICATE OF COMPLIANCE .................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buck v. Davis*,
    580 U.S. 100 (2017)...................................................................*passim*

*Chapman v. California*,
    386 U.S. 18 (1967)......................................................................16, 17

*Decloues v. Vannoy*,
    735 F. App'x 132 (5th Cir. 2018) ...........................................14

*Eddings v. Oklahoma*,
    455 U.S. 104 (1982)................................................................13, 14, 15

*Florida v. Nixon*,
    543 U.S. 175 (2004)...................................................................10

*Green v. Georgia*,
    442 U.S. 95 (1979)...................................................................13, 16

*James v. Kentucky*,
    466 U.S. 341 (1984)................................................................10, 16

*Littlejohn v. Royal*,
    875 F.3d 548 (10th Cir. 2017) ................................................8

*Lockett v. Ohio*,
    438 U.S. 586 (1978)..........................................................1, 12, 13, 15

*Miller-El v. Cockrell*,
    537 U.S. 322 (2003)..........................................................11, 14, 16

*Mobley v. State*,
    265 Ga. 292 (1995) ................................................................8

*Rhoades v. Davis*,
    852 F.3d 422 (5th Cir. 2017) .................................................2, 9

*Rhoades v. Davis*,
    914 F.3d 357 (5th Cir. 2019) .................................................13

**Page(s)**

*Riggins v. Nevada,*
504 U.S. 127 (1992)..............................................................................17

*Skipper v. South Carolina,*
476 U.S. 1 (1986)............................................................................13, 14

*Slack v. McDaniel,*
529 U.S. 473 (2000)..............................................................................15

*Strickland v. Washington,*
466 U.S. 668 (1984)..............................................................................10

*Tennard v. Dretke,*
542 U.S. 274 (2004)..............................................................................14

*United States v. Swanson,*
943 F.2d 1070 (9th Cir. 1991) ..............................................................10

*Wells v. Guerro,*
No. 24-70002, 2025 WL 2051145 (5th Cir. Jul. 22, 2025) .........2, 6, 15

*Wells v. Lumpkin,*
No. 4:21-CV-01384-O, 2023 WL 7224191 (N.D. Tex. Nov. 2,
2023) ..................................................................................................6, 15

*Wells v. State,*
611 S.W.3d 396 (Tex. Crim. App. 2020) ..................................2, 5, 12

*Ex parte Wells,*
No. WR-86,184-01, 2021 WL 5917724 (Tex. Crim. App. Dec. 15,
2021), *cert. denied sub nom.*, *Wells v. Texas*, 142 S. Ct. 2722
(2022)......................................................................................................5

*Zant v. Stephens,*
462 U.S. 862 (1983)..............................................................................10

# TABLE OF AUTHORITIES
## continued

**Page(s)**

**Statutes**

28 U.S.C.
   § 2241.................................................................................5
   § 2254.................................................................................5

Tex. Code Crim. Proc. Ann. art. 37.071§ 2 ...........................................3

**Other Authorities**

United States Constitution, Eighth Amendment.....................................1, 12, 13, 15

United States Constitution, Fourteenth Amendment ..............................13

Federal Rule of Civil Procedure 59(e) .......................................................6

**STATEMENT OF ISSUES MERITING EN BANC CONSIDERATION**

1. Did the panel contravene Supreme Court precedent by denying a Certificate of Appealability on a defendant's claim that trial counsel rendered ineffective assistance by presenting expert testimony that he is genetically prone to violence?

2. Did the panel contravene Supreme Court precedent by denying a Certificate of Appealability on a defendant's claim that the trial court's exclusion of mitigating video evidence violated his Eighth Amendment right?

**INTRODUCTION**

In this capital case, the panel erroneously denied Amos Wells a certificate of appealability ("COA") to pursue two meritorious claims. First, the panel denied a COA on Wells' ineffective-assistance-of-counsel claim challenging trial counsel's introduction of dubious expert testimony suggesting Wells is genetically prone to violence. But in *Buck v. Davis*, 580 U.S. 100 (2017), the Supreme Court reversed this Court's decision, denying a COA on similar facts and found Buck's ineffective-assistance claim had merit. Under *Buck*, Wells should *prevail* on his ineffective-assistance claim—but at minimum, a COA was warranted because "jurists of reason could disagree" about the proper resolution of that claim. *Id.* at 115.

Second, the panel denied a COA on Wells' Eighth Amendment claim challenging the trial court's exclusion of mitigating video evidence showing his remorse following his crimes. The Supreme Court has repeatedly held that juries must be able to consider such mitigating evidence in capital proceedings. *See, e.g.*, *Lockett v. Ohio*, 438 U.S. 586 (1978). But despite that precedent, the panel found

Wells' claim not even "reasonably debatable." *Wells v. Guerro*, No. 24-70002, 2025 WL 2051145, at *5 (5th Cir. Jul. 22, 2025) (per curiam). There was no sound basis for that conclusion.

En banc review is necessary to correct the panel's misapplication of Supreme Court precedent. This case is also exceptionally important for Wells—who currently faces a death sentence despite grave errors made by his defense counsel and the trial court—and has broader implications for the proper COA standard in the death-penalty context. *Buck* confirms the standard is not onerous. And this Court has recognized that "[w]here the petitioner faces the death penalty, 'any doubts as to whether a COA should issue *must* be resolved' in the petitioner's favor." *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (emphasis added). Because the panel failed to follow these basic principles, en banc review is warranted.

## FACTS AND PROCEDURAL HISTORY

During a July 1, 2013 argument, Wells fatally shot his girlfriend and her mother and brother. *Wells v. State*, 611 S.W.3d 396, 402-03 (Tex. Crim. App. 2020). Wells almost immediately turned himself in to authorities and confessed. *Id.* at 404.

Wells' initial eight-hour custody and interrogation was video-recorded. ROA.13489-13490. In the video, Wells sobs and apologizes when a detective informs him that all three victims had died. Def. Tr. Ex. 81 (Interrogation Video) at

4:34:27-4:35:17.  Wells tells the detective, "I . . . shouldn't have done it" and "I should have just shot myself."  *Id.* at 4:59:50-4:59:59, 5:05:06-5:05:10.

Wells was charged with capital murder, ROA.5115, and the trial court appointed William Ray and Stephen Gordon as counsel, ROA.5137-5141.  On November 3, 2016, the jury found Wells guilty.  ROA.5810.

Under Texas law, during the penalty phase, the jury had to answer two special issues.  The jury first considered whether there was a "probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."  Tex. Code Crim. Proc. Ann. art. 37.071 §§ 2(b)(1), (c).  If the jury answered "yes" to the first question, it considered whether there were mitigating circumstances warranting a sentence of life imprisonment.  *Id.* art. 37.071 § 2(e)(1).

Defense counsel's mitigation case centered on a theory that Wells was genetically prone to violence.  Counsel presented this "violence genetics" theory through psychiatrist Dr. William Bernet.  ROA.12802; ROA.12825.  Bernet testified that Wells had a "poorly functioning" Monoamine Oxidase A (MAOA) gene, ROA.13033, ROA.13073, which, combined with mild to moderate childhood trauma, "increased the probability that he would" be violent, ROA.13076.  Bernet told the jury that the science underlying his theory was "valid," ROA.13020, even though the "scientific community[]" had "serious and widespread doubts about" the

theory's validity, ROA.15138. Wells' counsel also described him as a "defect" and a "gangster" in front of the jury. ROA.13768; ROA.13773.

Predictably, the State seized on this testimony, emphasizing to the jury that the defense "*conceded*" the future violence special issue "through all their experts"—establishing the first death-penalty prerequisite. ROA.13793 (emphasis added); ROA.13751; ROA.13791. The prosecution's only other evidence of future dangerousness was the underlying murders, Wells' violence toward a prior romantic partner, and one in-prison incident. ROA.13745-13751.

Trial counsel attempted to introduce evidence of Wells' remorse in the immediate aftermath of his crimes, in part through the video of Wells' interrogation. ROA.13489. The video captures Wells' remorse and shows his grief and mourning. He can be seen wiping tears from his eyes, apologizing and hugging a detective. Def. Tr. Ex. 81 (Interrogation Video) at 4:32:27-4:33:17, 4:59:50-5:00:00. The trial court excluded this video as hearsay. ROA.13500; ROA.13502-13504. During closing, the State urged the jury to sentence Wells to death based in part on his purported lack of remorse. Prosecutors told the jury that Wells had "never shed a tear . . . in describing" his offense. ROA.13817.

The jury found that the prosecution proved the two special issues, and the trial court sentenced Wells to death. ROA.5860-5861.

Wells appealed his death sentence, arguing, *inter alia*, that the trial court's exclusion of the interrogation room video violated his constitutional right to present relevant mitigation evidence. At oral argument, judges expressed concern that under Supreme Court precedent, the video should have been admitted notwithstanding state hearsay rules. ROA.322-356. On November 18, 2020, the TCCA affirmed Wells' sentence, concluding the video was not "critical" to his defense. *Wells*, 611 S.W.3d at 423. The TCCA also found Wells had forfeited his mitigation claim regarding the video "because he did not make this remorse argument at trial." *Id.* (citing Tex. R. App. P. 33.1).

After Wells filed a state habeas application, the trial court entered findings of fact and conclusions of law recommending that relief be denied. ROA.16824; ROA.17968. The TCCA denied relief with minimal reasoning. *Ex parte Wells*, No. WR-86,184-01, 2021 WL 5917724 (Tex. Crim. App. Dec. 15, 2021), *cert. denied sub nom.*, *Wells v. Texas*, 142 S. Ct. 2722 (2022).

On December 13, 2022, Wells petitioned for writ of habeas corpus under 28 U.S.C. §§ 2241(d) and 2254, ROA.124, followed by an amended petition on March 20, 2023, ROA.517. That petition raised two claims relevant here: (1) trial counsel was ineffective for presenting the violence-genetics theory, ROA.580-596, and (2) excluding the video evidence showing Wells' remorse violated his constitutional right to present mitigating evidence, ROA.546-577. The district court denied the

5

petition and a COA on all issues. ROA.1175. As to the interrogation video, the district court found Wells "did not raise the argument during trial that" the video was "admissible to show remorsefulness." *Wells v. Lumpkin*, No. 4:21-CV-01384-O, 2023 WL 7224191, at *8 (N.D. Tex. Nov. 2, 2023). The court also reasoned that the TCCA's finding that Wells had failed to preserve his video mitigation claim constituted "an independent and adequate bar" to his mitigating evidence claims. *Id.* It also subsequently denied Wells' Federal Rule of Civil Procedure 59(e) motion. ROA.1240; ROA.1320.

Wells filed a notice of appeal, ROA.1335, followed by a request for a COA. On July 22, 2025, this Court denied a COA as to all claims. Relevant here, the panel reasoned that Wells' purportedly violence-prone genetics could have been a "sufficiently mitigating fact" that should not be questioned with the "twenty-twenty vision of hindsight." *Wells*, 2025 WL 2051145, at * 1-4. The Court further concluded that there was "other mitigating evidence" that left "no reason to think" the excluded video would have been material to the jury's deliberations. *Id.*

## ARGUMENT

## I. THE PANEL ERRONEOUSLY REJECTED WELLS' COA CLAIM BASED ON COUNSEL'S DECISION TO RAISE A VIOLENCE-GE-NETICS THEORY

In *Buck*, the Supreme Court held that an ineffective-assistance claim analogous to the one here was *meritorious*—and at minimum, raised issues

warranting a COA—based on defense counsel's introduction of evidence of a capital defendant's immutable characteristic that supposedly made him prone to future violence. 580 U.S. at 110. The Court emphasized that "[d]ispensing punishment on the basis of an immutable characteristic flatly contravenes th[e] guiding principle" that "[o]ur law punishes people for what they do, not who they are." *Id.* at 123. Here, the panel refused even to issue a COA on Wells' materially similar ineffective-assistance claim. That decision is contrary to *Buck*. En banc review is warranted to correct the panel decision and ensure this Circuit's COA rulings—particularly in the capital context—comport with Supreme Court precedent.

A. **The Supreme Court's Decision in *Buck* Confirms Wells' Ineffective-Assistance Claim Is At Least Debatable**

In *Buck*, the Supreme Court held a COA should have issued in circumstances analogous to those here. There, defense counsel introduced expert testimony suggesting the defendant's "race disproportionately predisposed him to violent conduct." 580 U.S. at 119. Because "the jury had to make a finding of future dangerousness before it could impose a death sentence," the report suggested that the defendant's immutable characteristic "made him more deserving of execution." *Id.* The Court held that "[n]o competent defense attorney would introduce such evidence about his own client," and the evidence prejudiced the defendant by making an "immutable characteristic" "directly pertinent on the question of life or

death." *Id.* at 119-22. The Court concluded that "the Fifth Circuit erred in denying the COA required to pursue [defendant's ineffective-assistance] claim[] on appeal." *Id.* at 128.

Here, as in *Buck*, trial counsel presented expert testimony that Wells is genetically prone to violence because of an irrelevant, immutable characteristic— his supposedly defective MAOA gene. ROA.13044. Specifically, Dr. Bernet explained that people like Wells were "four and a half times" more likely than others to commit acts of violence. ROA.13057; *see* ROA.13078. That narrative, in combination with Wells' own counsel describing him as a "defect" and a "gangster," ROA.13768, ROA.13773, if anything risked conjuring "powerful racial stereotype[s] . . . of black men as 'violence prone.'" *Buck*, 580 U.S. at 121 (citations omitted). And the genetics theory relied on science that had been thoroughly debunked by Wells' sentencing. ROA.15134. Courts had deemed it unreliable, *Mobley v. State*, 265 Ga. 292, 293 (1995), and skepticism over the "credibility of gene plus environment findings" was widespread. ROA.12836. Other Circuits have similarly discounted evidence of impulse control problems as "offer[ing] little, if any, quality mitigating evidence" with corresponding risk of a "sharp aggravating-evidence component." *Littlejohn v. Royal*, 875 F.3d 548, 562 (10th Cir. 2017).

Further, here, as in *Buck*, "the jury had to make a finding of future dangerousness before it could impose a death sentence." 580 U.S. at 119. In that

context, the expert testimony "said, in effect," that Wells' genetic makeup "made him more deserving of execution." *Id.* As a result, the prosecution *told the jury* that the defense had "*conceded* [future dangerousness] *through all their experts*." ROA.13793 (emphases added). As *Buck* explains, "[n]o competent defense attorney" would introduce such prejudicial "evidence about his own client." 580 U.S. at 119. At minimum, "jurists of reason could disagree" about the merits of Wells' ineffective-assistance claim—meaning a COA should have issued. *Id.* at 115, 128; *see also Rhoades*, 852 F.3d at 427 (emphasizing that "any doubts as to whether a COA should issue" in a capital case "must be resolved in the petitioner's favor").

**B.     The Panel Decision Warrants Review Because It Conflicts With *Buck* and Other Supreme Court Precedent**

1.     The panel failed to heed *Buck*'s teachings. It held that "[j]urists of reason would not debate" whether defense counsel rendered ineffective assistance. Op. 6. But it ignored *Buck*'s holding that the COA standard was met where, as here, defense counsel presented evidence that the defendant's "immutable characteristic" "disproportionately predisposed him to violent conduct." 580 U.S. at 120, 123. *Buck* went even further and concluded that the defendant's ineffective-assistance claim should succeed *on the merits*. *Id.* at 118-22, 128. Thus, there is no sound basis for concluding that Wells could not make the low "threshold" COA showing. *Id.* at 116, 118-22. Yet the panel did not cite *Buck* when analyzing Wells'

9

ineffective-assistance claim—much less explain why *Buck*'s logic should not apply. *See* Op. 5-7; *see also Zant v. Stephens*, 462 U.S. 862, 885 (1983) (holding capital sentence must be set aside where based on invalid aggravating factors that are "irrelevant to the sentencing process").

Nor did the panel engage with Supreme Court precedent holding that counsel performs deficiently by presenting aggravating evidence establishing a death-penalty prerequisite with no mitigating benefit. Because conceding an element of the prosecution's case departs from the adversarial process, doing so is reasonable only to the extent counsel reasonably believes the defendant will receive commensurate advantages. For instance, under *Florida v. Nixon*, 543 U.S. 175 (2004), counsel may concede guilt where doing so provides corresponding benefit— i.e., helping the defendant avoid a death sentence. Where counsel presents evidence establishing a part of the prosecution's case without *any* corresponding advantage to the defendant, counsel has not made a reasonable strategic judgment, but instead has failed to perform his duty of "mak[ing] the adversarial testing process work in the particular case." *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *see also United States v. Swanson*, 943 F.2d 1070, 1074-75 (9th Cir. 1991) (finding ineffective assistance where defense counsel conceded the only available bases for acquittal).

That is what happened here. The violence-genetics evidence established the prosecution's future-dangerousness case without any corresponding mitigating benefit. This is not a matter of hindsight, but is entirely predictable from the outset. Indeed, the violence-genetics testimony *undermined* the remainder of Wells' mitigation case. At minimum, "jurists of reason" could plausibly find the decision was not reasonably strategic. Op. 7. The panel erred in holding otherwise.

2.    The panel also committed a second error recognized in *Buck*. In *Buck*, the Supreme Court faulted the Fifth Circuit's COA decision for "essentially deciding the case on the merits." 580 U.S. at 115-16; *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). The Panel here made the same mistake. It examined the record and concluded that defense counsel's introduction of violence-genetics testimony fell within "the 'wide range of reasonable professional assistance.'" Op. 6. But that is not the required "initial determination whether a claim is reasonably debatable" for a COA—it is an "ultimate merits determination[] the panel should not have reached." *Buck*, 580 U.S. at 116.

To be sure, the panel "phrased its determination in proper terms" by referencing the reasonable-jurists standard. *Buck*, 580 U.S. at 115. But mere recitation of that standard is not enough. Instead, the question is whether the panel improperly reached "ultimate merits determinations," rather than "limiting its

examination . . . to a threshold inquiry." *Id.* at 116. Because the panel veered too far into the merits, it violated *Buck*.

3.  En banc review is warranted to correct the panel's errors. The panel not only disregarded *Buck*'s substantive holding, but also committed the same procedural error. The full Court should weigh in now to ensure the Circuit's COA decisions—particularly in high-stakes capital cases like this one—accord with the Supreme Court's teachings.

## II.  THE PANEL ERRONEOUSLY REJECTED WELLS' COA CLAIM BASED ON HIS RIGHT TO PRESENT MITIGATING EVIDENCE

The Eighth Amendment guarantees Wells the right to introduce mitigating evidence at the penalty phase. Wells' trial counsel attempted to do that, offering an eight-hour video demonstrating Wells' remorse, including his sobbing, apologizing, and incantations that he wanted to end his life. Trial counsel attempted to admit the video in its entirety, ROA.13491, "for all purposes in front of the jury" as "mitigating" evidence, ROA.13501, ROA.13493, but the trial court excluded the video. *Wells*, 611 S.W.3d at 409-10. The State then argued in closing exactly the *opposite* of what the video shows—that Wells "never shed a tear." ROA.13817.

In *Lockett* and its progeny, the Supreme Court confirmed that a sentencing jury must be allowed to hear all relevant mitigating evidence—especially in capital cases. Here, the panel wrongly approved the exclusion of video evidence of Wells'

remorse. En banc review is needed to correct the panel decision and ensure this Court adheres to *Lockett* and its progeny.

## A.  The Panel Decision Conflicts with *Lockett* and Other Supreme Court and Circuit Precedent

In denying Wells' COA, the panel failed to acknowledge that jurists of reason could disagree with the district court's resolution of Wells' Eighth Amendment claim. That decision contravenes *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion), *Green v. Georgia*, 442 U.S. 95, 97 (1979), *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982), and *Skipper v. South Carolina*, 476 U.S. 1, 8 (1986). Those decisions confirm that jurists of reason could debate whether excluding a video showing Wells' grief and remorse violated his Eighth Amendment right.

As this Court has acknowledged, "*Lockett*, *Eddings*, and *Skipper* emphasized the severity of imposing a death sentence and [made clear] that the sentencer in capital cases must be permitted to consider *any* relevant mitigating factor," and "[t]he Supreme Court has adopted an expansive definition of relevant mitigation evidence." *Rhoades v. Davis*, 914 F.3d 357, 365-366 (5th Cir. 2019) (cleaned up). In *Lockett*, the Supreme Court determined that state law limitations on the types of admissible mitigation evidence were "incompatible with the Eighth and Fourteenth Amendments," 438 U.S. at 608, because the sentencer must be allowed to consider "any aspect of a defendant's character or record." *Id.* at 604.

The Supreme Court applied this principle in *Green*, *Eddings*, and *Skipper*, in each case ruling that it was error to exclude mitigating evidence. *Green*, 442 U.S. at 97; *Eddings*, 455 U.S. at 114; *Skipper*, 476 U.S. at 8. The exclusion of potentially mitigating evidence inhibits "the sentencing jury's ability to carry out its task of considering all relevant facets of the character and record of the individual offender." *Skipper*, 476 U.S. at 8. A sentence entered in violation of this principle "cannot stand." *Id.*

Here, the panel violated those decisions by affirming the exclusion of video evidencing Wells' remorse. In so doing, the panel cites only *Tennard v. Dretke*, 542 U.S. 274 (2004)—a case in which the Supreme Court held that relevant mitigating evidence was wrongly excluded and that the Fifth Circuit should have issued a COA. *Id.* at 288 ("[r]easonable jurists could conclude that the low IQ evidence Tennard presented was relevant mitigating evidence"). Yet, the panel made no effort to reconcile its COA denial here with the COA grant in *Tennard*.

The panel also asserted that "at best, the excluded [video] evidence was cumulative." Op. at 9. This is wrong. As an initial matter, the panel again improperly ruled "on the merits of [the] case" rather than addressing the threshold question of "debatability." *Buck*, 580 U.S. at 115; *Miller-El*, 537 U.S. at 327. Moreover, the cumulativeness conclusion ignores the power of the video evidence— showing an extended period of Wells' remorse in the murders' immediate aftermath.

14

Yet instead of appreciating the video's import, the panel dismissed Wells' remorse as "strange behavior." Op. at 9; *see, e.g.*, *Decloues v. Vannoy*, 735 F. App'x 132, 133 (5th Cir. 2018) (per curiam) (reversing denial of habeas petition; observing "there is no complete substitute for video evidence").

A sentencing court "may determine the weight to be given relevant mitigating evidence," but it cannot "give it no weight by excluding such evidence from [the jury's] consideration." *Eddings*, 455 U.S. at 114-15. That is precisely what occurred in Wells' sentencing, and it is why jurists of reason could—and should—determine that excluding the video evidence contravened *Lockett* and the Eighth Amendment.

### B. The Panel Decision Warrants Review Because Both the District Court's Constitutional and Procedural Rulings Are At Least Debatable

A COA should issue if both the district court's procedural ruling and the underlying constitutional claim are debatable. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). For all the reasons discussed, the district court's constitutional ruling is debatable because it contravenes *Lockett* and its progeny.

Regarding procedure, the District Court accepted the state appellate court's holding that Wells failed to preserve his Eighth Amendment mitigation claim and deemed that holding "an independent and adequate bar" to the claim. *Wells*, 2023 WL 7224191, at *8. The panel accepted these procedural rulings whole cloth, even

though they are at least debatable. *Slack*, 529 U.S. at 478. In so doing, the panel committed three errors.

*First,* the panel determined that jurists of reason would not debate the district court's application of Texas's evidentiary rules. Op. at 9. But in so holding, the panel ignored *Green v. Georgia*, 442 U.S. 95, 97 (1979), which confirms that reliable mitigating evidence cannot be excluded as hearsay. *Id.* (the hearsay rule may not be applied mechanistically to defeat the ends of justice"). The panel also ignored *James v. Kentucky*, 466 U.S. 341, 351 (1984), which rejected a state procedural bar requiring use of a "magic word" when it was "inescapable that the defendant sought to invoke the substance of his federal right. Reasonable jurists could debate the lower court's contrary ruling.

*Second*, the panel decision also made an improper merits determination by reviewing the record and finding (incorrectly) that "Wells failed to make the specific evidentiary proffer required by Texas law." Op. at 9. That review of the record was improper for a COA analysis. *Buck*, 580 U.S. at 115; *Miller-El*, 537 U.S. at 327. In any event, trial counsel *did* proffer the videos "for all purposes in front of the jury" and as "mitigating" evidence, including to show Wells' "mental condition." ROA.13501; ROA.13493.

 *Third*, the district court's conclusion that excluding the mitigating evidence was harmless conflicts with *Chapman v. California*, where the Supreme Court held

that "[a]n error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless."  386 U.S. 18, 23-24 (1967).  That is especially true in a capital case, where remorse may be "determinative of whether the offender lives or dies."  *Riggins v. Nevada*, 504 U.S. 127, 144 (1992) (Kennedy, J., concurring).  While *Chapman* involved the erroneous admission of relevant evidence, the harmlessness principle applies just the same.  *Chapman* illustrates that a finding of harmless error is at least debatable.

## CONCLUSION

Wells respectfully requests this Court grant his petition for rehearing en banc.

Date: August 5, 2025

Respectfully submitted,

<u>s/ Matthew L. Kutcher</u>

Elizabeth M. Wright
COOLEY LLP
500 Boylston St.
Boston, MA 02116
(617) 937-2300

Matthew L. Kutcher
COOLEY LLP
110 N. Wacker Dr.
Chicago, IL 60606
(312) 881-6500
mkutcher@cooley.com

Ginger D. Anders
Xiaonan April Hu
Andra Lim
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
  Suite 500E
Washington, DC 20001
(202) 220-1100
Ginger.Anders@mto.com

William S. Harris
THE LAW OFFICE OF WILLIAM S. HARRIS
604 E. 4th St., Suite 101
Fort Worth, TX 76102
(817) 718-7060

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF SERVICE

I certify that on August 5, 2025, this document was served on all parties or their counsel of record through the CM/ECF system.


Date: August 5, 2025                Respectfully submitted,

                                    s/ Matthew L. Kutcher
                                    Matthew L. Kutcher

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 40(d)(3)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,873 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman.


Date: August 5, 2025                                  Respectfully submitted,

                                                     s/ Matthew L. Kutcher
                                                     Matthew L. Kutcher

322385416

20

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2025

Lyle W. Cayce
Clerk

No. 24-70002

---

Amos Wells,

*Petitioner—Appellant,*

*versus*

Eric Guerrero, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-1384

---

Before Stewart, Graves, and Oldham, *Circuit Judges.*

Per Curiam:[*]

A Texas jury convicted Amos Wells of multiple murders and sentenced him to death. After exhausting his appeals and postconviction remedies in state court, Wells sought postconviction relief in federal court. The district court denied it. Now Wells asks us for a certificate of

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-70002

appealability ("COA"). Because his claims are not debatable amongst jurists of reason, we deny his application.

I

On July 1, 2013, Amos Wells became angry with his pregnant girlfriend, Chanice Reed, for refusing to answer his phone calls. He drove to her home with a gun in his truck. When he arrived, he took Chanice outside and the two argued. Wells shot Chanice four times and killed her; Wells shot Chanice's mother twice and killed her; and Wells shot Chanice's ten-year-old brother, Eddie, four times and killed him. Wells also killed Chanice's unborn baby.[1] *Wells v. State*, 611 S.W.3d 396, 403 (Tex. Crim. App. 2020). The shooting stopped when Wells' gun jammed. Wells got into his truck, drove around town, and then went to the police station and confessed.

A jury convicted Wells of capital murder and sentenced him to death. The penalty phase required the jury to find "a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society," and that there were no "sufficient mitigating circumstance or circumstances to warrant" a life sentence without parole instead of the death penalty. The jury made those requisite findings and Wells received a death sentence. He brought a direct appeal to the Texas Court of Criminal Appeals, raising thirteen points of error. *Id.* at 402. The CCA found no error and affirmed the conviction and sentence.

Wells sought post-conviction habeas relief in state court and appealed its denial to the Texas Court of Criminal Appeals and Supreme Court of the United States. *See Ex parte Wells*, No. WR-86, 184-01, 2021 WL 5917724 (Tex. Crim. App. Dec. 15, 2021), *cert. denied sub nom.*, *Wells v. Texas*, 142 S.

---

[1] Postmortem DNA testing confirmed that Wells was, in fact, the child's father. *Id.*

No. 24-70002

Ct. 2722 (2022). He then brought a federal habeas petition in the Northern District of Texas, raising nine claims. The district court found all meritless and denied the petition along with Wells's accompanying motions to stay state proceedings and for a COA. *Wells v. Lumpkin*, No. 4:21-CV-01384-O, 2023 WL 7224191 (N.D. Tex. Nov. 2, 2023). Wells filed a motion under Rule 59(e) to alter or amend the judgment, which the district court also denied. Wells timely appealed.

II

Wells requests a certificate of appealability on four of his claims. *See* 28 U.S.C. § 2253(c)(3) (limiting the availability of a COA to a "specific issue or issues"). We "may issue" a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). That standard requires a petitioner to "demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). If the district court's ruling rested on procedural grounds, the prisoner must show both that the procedural ruling is debatable and that it is debatable whether he stated a valid claim. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

"The COA inquiry . . . is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). Thus, at this preliminary COA stage, we do not consider the *merits* of Wells' claims— only whether he has shown that the district court's resolution of them is *debatable* amongst jurists of reason. *See id.*

No. 24-70002

None of Wells' claims meets the COA standard. We first (A) hold that jurists of reason would not debate whether Wells' trial counsel rendered ineffective assistance by (1) presenting expert testimony about his possible genetic predisposition to violence and (2) failing to strike a particular juror who allegedly believed that the death penalty should be mandatory for those guilty of murder. We then (B) explain that jurists of reason would not debate whether the trial court violated the Eighth Amendment by excluding certain potentially mitigating video evidence. Finally, we (C) hold that jurists of reason would not debate whether Wells' appellate counsel rendered ineffective assistance by failing to argue that Eighth Amendment issue on appeal.

A

Ineffective assistance of counsel ("IAC") claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. The defendant must also show prejudice, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

Where a defendant's IAC claim is adjudicated under § 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). So the state court's determination "must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*, *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (describing this review as "doubly deferential"). So, in addition to respecting the state court's decision, we afford a "strong presumption of

No. 24-70002

reasonableness" to Wells' counsel. *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (per curiam) (quotation omitted); *Titlow*, 571 U.S. at 15. Even where "counsel's conduct was far from exemplary," relief is warranted only where "*every* fairminded jurist would agree that *every* reasonable lawyer would have made a different decision." *Dunn*, 594 U.S. at 739–40 (emphasis in original) (cleaned up).

And under *Buck*, we do not ask if the district court correctly applied these legal rules. We ask only whether the district court's resolution of the claim is debatable amongst jurists of reason. *See Buck*, 580 U.S. at 115.

1

Wells first contends trial counsel rendered IAC by presenting expert testimony that he was genetically predisposed to violence at the penalty phase. The defense's theory went as follows: Mutations in the Monoamine Oxidase A ("MAOA") gene can affect the brain's metabolism of serotonin. When combined with childhood abuse, low-activity MAOA mutations increase the likelihood of future violent behavior and difficulty controlling anger. Wells' team of experts determined that he had the low-activity MAOA mutation and a "semi traumatic environment in formative years," contributing to "a greater likelihood that [Wells] could have explosive and violent outbursts in his lifetime."

Wells now objects to this strategy on two grounds: First, he argues it conceded a necessary element to the prosecution. *See* ROA.5861 (requiring jury to find a "probability" that Wells "would commit future acts of violence" at penalty phase). Second, he contends that it permitted the jury to convict him based on an "immutable genetic trait." *see Buck*, 580 U.S. at 123 ("Dispensing punishment on the basis of an immutable characteristic flatly contravenes th[e] guiding principle" that "[o]ur law punishes people for what they do, not who they are."). The CCA rejected this claim on the

merits. And the district court held the claim "border[s] on frivolous." *Wells*, 2023 WL 7224191, at *10.

Jurists of reason would not debate the district court's resolution of this claim. The record shows that the state habeas court acknowledged the "wide range of reasonable professional assistance" and the "heavy measure of deference" due to strategies developed for trial. It accordingly declined to evaluate counsel's performance using the "twenty-twenty vision of hindsight." And it acknowledged the danger of using evidence like this, which is often "a double-edged sword that jurors could consider either as sufficiently mitigating evidence or as powerful evidence of future dangerousness."

Wells' counsel acknowledged all along that this evidence could support a positive finding on the issue of future violence. *See* ROA.15978 (memorandum of trial counsel submitted in 2016) (acknowledging this evidence "could potentially help the State's efforts" to show a probability of future violence). Counsel nonetheless believed it "could be a sufficiently mitigating fact" because Wells chose neither his genetics nor his childhood experiences, diminishing his perceived culpability. So counsel concluded it might "ultimately help [Wells'] chances of not receiving the death penalty." Additionally, Wells' genetic expert testified that the increased probability of violence "doesn't mean it's likely to happen; it means he's more likely than an average person." His counsel argued that the genetic testimony "gives you cause to pause" and asked whether Wells should receive the death penalty "when we know there are [three] things he couldn't control . . . genes, his brain, and his environment."

Whether to present such evidence lies within the heartland of "strategic decisions" that appellate courts cannot second-guess unless the defendant rebuts their "strong presumption of reasonableness." *Dunn*, 594

U.S. at 739 (quotation omitted). That is precisely why the federal district court rejected Wells' claim. *See Wells*, 2023 WL 7224191, at *11 (describing this theory as "nothing more than mere post-hoc disagreement with trial counsel's strategy"). And we do not think the district court's treatment of this claim is debatable among jurists of reason.

2

Wells further argues his trial counsel rendered IAC by failing to strike a juror based on his comments about the death penalty during voir dire. *Strickland* also governs challenges to counsel's failure to strike or challenge prospective jurors for cause. *Harper v. Lumpkin*, 64 F.4th 684, 692 (5th Cir. 2023); *see also id.* at 693 (holding that no "clearly established federal law . . . would allow reasonable jurists to debate th[e] conclusion" that counsel was not ineffective when it failed to challenge jurors who "expressed the opinion that they could answer the special issues in such a way that either life or death would result based on the evidence and the law").

In a voir dire questionnaire, one prospective juror indicated he believed the death penalty should apply to those found guilty of murder. During his voir dire examination, however, the juror accepted that Texas law requires aggravating factors in addition to a mere finding of guilt to impose a death sentence. He also pledged that he would not always find a defendant dangerous in the future and would answer the special issues based on the evidence adduced at trial. At the end of examinations from both the prosecution and the defense, the juror affirmed he "might give [Wells] a death sentence and [he] might not."

We have held that failure to strike a juror is constitutionally permissible when he pledges during voir dire to follow the law. *Harper*, 64 F.4th at 693. Moreover, trial counsel may make reasonable strategic decisions in striking or not striking prospective jurors. *Cf. Morgan v. Illinois*, 504 U.S.

No. 24-70002

719, 729 (1992) ("The Constitution, after all, does not dictate a catechism for voir dire . . .").

The CCA rejected this claim on the merits. And the district court held "[t]his claim fails to satisfy either prong of *Strickland* under *de novo* review and does not warrant federal habeas relief." *Wells*, 2023 WL 7224191, at *21.

Jurists of reason would not debate the district court's decision. Trial counsel explained that he was concerned about peremptorily striking the juror because he was a minority, fearing that it would undermine his *Batson* challenge. Trial counsel was also concerned that using one of his peremptory strikes could result in a "much worse" juror getting seated. The district court therefore held there were no grounds for a for-cause strike, and that Wells suffered no prejudice in any event. Jurists of reason would not debate that decision.

B

Wells also alleges the trial court violated his Eighth Amendment right to present mitigating evidence by excluding certain video evidence—specifically, video evidence of Wells' purported remorsefulness in the police interrogation room. "[T]he Eighth Amendment requires that the jury be able to consider and give effect to a capital defendant's mitigating evidence." *Tennard v. Dretke*, 542 U.S. 274, 285 (2004) (quotation omitted). The decision to exclude such evidence "is quintessentially a trial error subject to harmless error review." *Rhoades v. Davis*, 914 F.3d 357, 368 (5th Cir. 2019).

Wells' counsel sought to introduce the recording during the penalty phase to show Wells "was acting strange" or "under some distorted emotional sense." **ROA.13495–96**. The video lasts about eight hours and depicts his initial, hourlong interview, six hours of Wells' detention, and his second, hourlong interview. *Wells*, 611 S.W.3d at 407. During the downtime

No. 24-70002

between the interviews, Wells exhibited some strange behavior and made repeated comments like "This is too weird" and "This is a dream." *Id.* Wells contends this evidence tended to show his remorse, and such remorsefulness could constitute mitigating evidence at sentencing.

The CCA held this claim was procedurally defaulted because Wells never tried to introduce the evidence to show remorse and because some of the evidence did not satisfy the State's hearsay rules. And in any event, the CCA held the claim was meritless because any error was harmless beyond a reasonable doubt. On federal review, the district court held that the CCA's ruling constituted an adequate and independent state ground that barred federal relief. *Wells*, 2023 WL 7224191, at *8. To secure a COA, Wells must show both that the district court's procedural ruling is debatable and that the underlying constitutional claim is debatable. *Slack*, 529 U.S. at 484.

Neither ground is debatable. As to the district court's procedural ruling, the record shows that Wells failed to make the specific evidentiary proffer required by Texas law. *Golliday v. State*, 560 S.W.3d 664, 669–70 (Tex. Crim. App. 2018); Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1(a)(1)(A). Nor would jurists of reason debate the district court's application of Texas's evidentiary rules.

In any event, Wells has failed to show that the underlying merits are debatable. That is because jurists of reason would conclude that, at best, the excluded evidence was cumulative. The jury saw several pieces of evidence that showed the same alleged remorse: a video of Wells taken immediately after the offense and before the excluded video began, officer's testimony about his "trance-like demeanor," testimony about a phone call Wells made "immediately after the shootings," and evidence about his suicidal and distraught state. That is a considerable amount of material showing Wells' mental state after the murders. *Cf. Wong v. Belmontes*, 558 U.S. 15, 23 (2009)

No. 24-70002

("Additional evidence on these points would have offered an insignificant benefit, if any at all.").

Additionally, trial counsel presented a host of other mitigating evidence attempting to demonstrate the same attributes Wells contends the video would show. That included testimony from family members, doctors and mental health professionals, people from his childhood, and Wells himself. Wells has shown no reason to think that "the evidence in favor of mitigation and the evidence against mitigation [was] so delicately balanced that the excluded . . . video would have been enough to tip the scales." *Wells*, 611 S.W.3d at 418.

In short, Wells cannot show that the district court's procedural ruling was debatably wrong. Nor can he show that the merits underlying his Eighth Amendment claim are debatable.

## C

Finally, Wells contends that his appellate counsel rendered IAC on state direct review by failing to object to the trial court's exclusion of three "jailhouse media interviews" from the day after the murders. These videos showed Wells "cr[ying], express[ing] his desire to die, and apologiz[ing]." Appellate counsel initially challenged only the exclusion of the interrogation room video, not the next day's news clips.

This claim is subject to the *Strickland* standard, as clarified in *Smith v. Robbins*, 528 U.S. 259 (2000). Appellate counsel provides IAC where he acts "objectively unreasonabl[y]," *id.* at 285, in "fail[ing] to discover nonfrivolous issues and [filing] a merits brief raising them." *Id.* The defendant must also show prejudice. *Id.* at 286. Generally, to succeed on this kind of claim, defendants must instead show that omitted issues "are clearly stronger than those presented." *Id.* at 288 (quotation omitted). That requirement respects counsel's strategic discretion: "[A]ppellate counsel

No. 24-70002

who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.*

The CCA rejected this claim on the merits. It concluded that any error was harmless because the jury considered "better, more compelling evidence" of Wells' mental condition shortly after the murders. And the district court held Wells' ineffective-assistance-of-appellate-counsel "claims fail to satisfy the prejudice prong of *Strickland* and thereby fail to warrant federal habeas relief." *Wells*, 2023 WL 7224191, at *24.

Jurists of reason would not debate the district court's resolution of this claim. During state habeas proceedings, appellate counsel submitted an affidavit stating that he raised "all of the points of error in the appeal that [he] determined to have merit." He appealed exclusion of the interrogation video over the others because he "thought [it] had the best chance" of aiding reversal. For good reason: The jailhouse media interview videos contained highly negative commentary about Wells from reporters, the victims' family members, and a neighbor. We therefore do not think jurists of reason would debate the district court's rejection of this claim.

\*     \*     \*

Wells has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, his motion for a COA is DENIED.